In The United States District Court
For The Southern District of Mississippi
Northern Division

Edgar (Ed) Oliver                                                   Plaintiff

v.                                     Civil Action No: 3:22-cv-352-TSL-RPM

Covidien Sales LLC, Covidien LP,
Covidien Holding, Inc.,
Tyco Healthcare Group L.P.,
Medtronic, Inc., and Does 1-10                                     Defendants

**Complaint**
**Jury Trial Demanded**

COMES NOW Edgar (Ed) Oliver and files this Complaint against defendants and would show unto the Court the following:

**Parties**

1. Plaintiff, Ed Oliver, is a Mississippi resident who resides in Hinds County, Mississippi. He is a Registered Nurse.

2. Covidien Sales LLC is a limited liability company organized and existing under the laws of the State of Massachusetts, having its headquarters and principal place of business at 15 Hampshire Street, Mansfield, MA 02048.

3. Covidien LP (formerly known as Tyco Healthcare Group L.P.) is a Delaware based corporation with its principal place of business at 15 Hampshire Street, Mansfield, MA 02048.

4. Covidien Holding Inc. (formerly known as Covidien Inc.) is a Delaware corporation with its principal place of business at 15 Hampshire Street, Mansfield, MA 02048.

5. Tyco Healthcare Group L.P., now known as Covidien LP, is a Delaware corporation with its principal place of business at 15 Hampshire Street, Mansfield, MA 02048.

6. Medtronic Inc. is a Minnesota corporation with its headquarters at 710 Medtronic Parkway, Minneapolis, Minnesota 55432-5604. Medtronic Inc. is a distributor of certain medical devices.

7. Defendants Does 1-10 ("Doe Defendants") are fictitious parties who or which caused or contributed to cause the injuries to Ed Oliver as set forth herein. The identities of these fictitious party defendants are unknown to plaintiff but the true identity of Does 1-10 will be substituted by amendment when their identity is ascertained.

8. In this complaint, "Defendants" refers to all named defendants as well as every parent, subsidiary, predecessor, successor and related entities of each named defendant.

### Jurisdiction and Venue

9. Pursuant to 28 U.S.C § 1332 this Court has subject matter jurisdiction of this civil action since the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties.

10. Defendants are qualified under the Constitution and laws of Mississippi to do business herein, are in fact doing business in Mississippi, have committed a tort in Mississippi against a Mississippi resident, and are each subject to the jurisdiction of the courts of this state through the Mississippi long-arm statute. Miss. Code Ann. § 13-3-57.

11. Venue of this action properly lies in the Southern District of Mississippi pursuant to 28 U.S. Code § 1391 as it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

### Surgery Number 1
### Hernia Repair
### Parietex™ Composite Ventral Patch Installed

12. On 14 November 2014 Ed Oliver underwent surgery to repair an umbilical hernia.

13. The surgery was performed at St. Dominic-Jackson Memorial Hospital in Jackson, MS by Jonathan Atkins, M.D.

14. Ed Oliver's umbilical hernia was repaired using a a Parietex™ Composite Ventral Patch Lot PODD0478.

15. The Parietex™ Composite Ventral Patch is a defective medical device designed, manufactured, and sold by defendants.

### Surgery Number 2
### Bowel Obstruction
### Parietex™ Composite Ventral Patch Removed

16. On or about 5 November 2016 Ed Oliver experienced

3

severe abdominal pain and went to the Emergency Room at Baptist Medical Center in Jackson, MS for treatment.

17. Ed Oliver was diagnosed via CT imaging with a bowel obstruction and admitted to Baptist Medical Center.

18. By 7 November 2016 Ed Oliver's bowel obstruction had not improved.

19. On 7 November 2016 Lee Nichols, M.D. performed a diagnostic laparoscopy to determine the cause of Ed Oliver's bowel obstruction.

20. During the diagnostic laparoscopy Dr. Nichols observed *"extremely dense and inflammatory adhesions"* with a *"very odd pattern."* Dr. Nicols noted that Ed Oliver: *"had no adhesive disease to his abdominal wall. His stomach and his colon had no adhesive disease, but his entire small bowel was extremely dense and inflammatory adhesions, some chronic component and some acute component, and they are almost looks like dense adhesions that you see with longstanding peritoneal dialysis."*

21. The adhesions were *"too thick"* for Dr. Nicols to deal with, and the laparoscopy was converted to a laparotomy. He made a *"midline incision and eviscerated all of the small bowel."*

22. Dr. Nicols described Ed Oliver's small bowel as a *"dense, inseparable knot of intestine…and there was no way to free this up."* Instead, the knot in his small bowel had to be

4

resected, i.e. cut out, along with the Parietex™ Composite Ventral Patch from his prior hernia surgery.

23. Dr. Nicols performed a side-to-side functional end-to-end stapled anastomosis of the resected small bowel.

24. The adhesions, inflammation, and intestinal knot described by Dr. Nicols were caused by the defective Parietex™ Composite Ventral Patch put into Ed Oliver's body during the 2014 surgery.

25. After 12 days of painful recovery, Ed Oliver was discharged from Mississippi Baptist Medical Center on 16 November 2016 for an eight-week period of recuperation at home.

26. The surgery performed by Dr. Nicols on 7 November 2016 and the resulting damage caused to Ed Oliver were proximately caused by the defective Parietex™ Composite Ventral Patch placed in his body on 14 November 2014.

### Surgery Number 3
### Dr. Nicols Forced To Operate Again

27. Despite the revision surgery of 7 November 2016, Ed Oliver continued to experience difficulties proximately caused by the defective Parietex™ Composite Ventral Patch placed into his body on 14 November 2014.

28. On 28 February 2018 Ed Oliver was admitted to Mississippi Baptist Medical Center. Dr. Nicols performed another hernia revision surgery to surgically repair an

incarcerated incisional hernia, secondary to the surgery of 7 November 2016.

29. After another painful six-day stay in the hospital, Ed Oliver was discharged from Mississippi Baptist Medical Center on 6 March 2018 for an eight-week period of recuperation at home.

30. This second hernia revision surgery performed by Dr. Nicols and the resulting damage caused to Ed Oliver were proximately caused by defects in the Parietex™ Composite Ventral Patch placed in Ed Oliver's body on 14 November 2014.

### Parietex™ Composite Ventral Patch Has Many Problems Associated With It

31. Defendants' Parietex™ Composite Ventral Patch is a defective product.

32. The Parietex™ Composite Ventral Patch contains polyester. Polyester is more likely to cause severe inflammation than polypropylene, and polyester is not as strong as polypropylene.

33. In 1998 an article published in the *Journal of the American Medical Association Surgery* concluded, after a 9-year study, that "polyester mesh should no longer be used for incisional hernia repair." The next year defendants started selling polyester hernia mesh products.

34. The Parietex™ Composite Ventral Patch causes inflammation in the intestines in an unreasonably large group of

individuals who have this product placed in their body during surgery.

35. The Parietex™ Composite Ventral Patch is surrounded by a film coating. This film coating was designed to prevent the Parietex™ Composite Ventral Patch from sticking to organs. Unfortunately, the film coating does not work.

36. The film coating degrades quickly. Once the film coating is gone, the Parietex™ Composite Ventral Patch acts like a piece of Velcro and attaches itself to organs.

37. The Parietex™ Composite Ventral Patch should not stick to organs. Regrettably, it does. When this happens, the possible outcomes are not good. One result is the Ed Oliver bowel obstruction scenario.

38. The fibers of the Parietex™ Composite Ventral Patch easily fall off the product during and after implantation in a human.

39. These rogue fibers from the Parietex™ Composite Ventral Patch move throughout the human body causing inflammatory responses, such as occurred in Ed Oliver's intestine.

40. The Parietex™ Composite Ventral Patch is secured in the body by stapling or tacking devices. These staples or tacks cause further damage to the film coating covering the Parietex™ Composite Ventral Patch. This increases the risk of adhesion to underlying organs.

41. The Parietex™ Composite Ventral Patch should not unravel. However, it does. The unraveling fibers poke out from the mesh like barbed wire causing pain, an increased risk of organ and tissue perforation, and an increased risk of adhesion to organs.

42. Since the Parietex™ Composite Ventral Patch frays and unravels, it is virtually impossible to completely remove this defective product from the human body once installed. Therefore, the negative consequences it sets in motion cannot be fully stopped.

43. Defendants failed to conduct any human trials to test the safety and efficacy of the Parietex™ Composite Ventral Patch prior to turning its sales force loose on the unsuspecting medical community.

44. The Parietex™ Composite Ventral Patch was aggressively marketed by defendants.

45. Immediately upon its introduction in the marketplace, and prior to Ed Oliver's 2014 surgery defendants became aware of complications associated with the use of the defective Parietex™ Composite Ventral Patch. These difficulties included, among other things: increased rate of adhesions, severe inflammatory response, chronic inflammatory response, bowel obstruction, nausea, vomiting, and migration. Defendants failed to warn of these risks.

46. Defendants failed to design and establish a safe and effective protocol for medical professionals to follow when removing a Parietex™ Composite Ventral Patch.

### Liability Of Covidien Sales LLC, Covidien LP, Covidien Holding, Inc., Tyco Healthcare Group L.P., Medtronic, Inc., and Does 1-10 Pursuant To Mississippi Code Ann. § 11-1-63

47. Defendants either individually or through affiliates designed, manufactured, marketed, packaged, labeled, and sold a defective medical device known as Parietex™ Composite Ventral Patch that was placed in Ed Oliver's body on 14 November 2014.

48. Defendants are liable to Ed Oliver pursuant to Miss. Code Ann. § 11-1-63.

49. The Parietex™ Composite Ventral Patch that was placed in Ed Oliver's body was defective.

50. The Parietex™ Composite Ventral Patch was defective because it failed to contain adequate warnings. This defective condition rendered the product unreasonably dangerous to Ed Oliver, and the defective and unreasonably dangerous condition of this product proximately caused the damages for which recovery is sought.

51. Defendants made public statements in the form of written product descriptions, product labels, and promotional materials claiming the Parietex™ Composite Ventral Patch was safe to use in routine hernia surgeries, such as Ed Oliver

underwent on 14 November 2014. In fact, the Parietex™ Composite Ventral Patch was not safe. It was defective and unreasonably dangerous.

52. The statements made by the defendants about the Parietex™ Composite Ventral Patch failed to adequately warn of the dangers associated the Parietex™ Composite Ventral Patch.

53. Defendants failed to warn that the Parietex™ Composite Ventral Patch can, after the hernia surgery is complete, migrate throughout the body, leading to infection, inflammation, chronic pain, and bowel obstructions.

54. At the time the Parietex™ Composite Ventral Patch left the control of the defendants, the defendants knew or in light of reasonably available knowledge should have known about the danger that caused the damage to Ed Oliver for which recovery is sought and that the ordinary user or consumer would not realize the dangerous condition presented by the Parietex™ Composite Ventral Patch.

55. Defendants failed to communicate sufficient information on the dangers and safe use of Parietex™ Composite Ventral Patch, taking into account the characteristics of, and the ordinary knowledge common to, a physician who would use Parietex™ Composite Ventral Patch.

56. At the time the Parietex™ Composite Ventral Patch left the control of the defendants the product was designed in a defective manner.

57. At the time the Parietex™ Composite Ventral Patch left the control of the defendants, the defendants knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage to Ed Oliver for which recovery is sought.

58. The Parietex™ Composite Ventral Patch failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm to Ed Oliver as described herein. The feasible design alternative would have to a reasonable probability prevented the harm to Ed Oliver without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

59. The defective condition of the Parietex™ Composite Ventral Patch rendered the product unreasonably dangerous to Ed Oliver.

60. The defective and unreasonably dangerous condition of the Parietex™ Composite Ventral Patch as described herein proximately caused the damages to Ed Oliver for which recovery is sought.

61. Defendants' conduct in releasing the Parietex™ Composite Ventral Patch for sale to the unsuspecting public when defendants knew, or in the exercise of reasonable care should have known that the Parietex™ Composite Ventral Patch was defective and unreasonably dangerous and likely to cause serious health complications showed actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, such as Ed Oliver.

62. There are other similar incidents throughout the United States of personal injuries caused by the failure of the Parietex™ Composite Ventral Patch.

63. The defective and unreasonably dangerous condition of the Parietex™ Composite Ventral Patch is the proximate cause of Ed Oliver's injuries and damages.

## Damages

64. The damages sustained by Ed Oliver as a result of the defective Parietex™ Composite Ventral Patch were foreseeable to defendants.

65. Ed Oliver is entitled to an award of compensatory and punitive damages from defendants.

66. Ed Oliver seeks an award from defendants for all damages available to him under Mississippi law, including but not limited to: past, present, and future medical expenses;

past, present and future life care needs; past, present, and future pain and suffering; lost wages, and punitive damages.

67. Ed Oliver's damages were caused by the defective Parietex™ Composite Ventral Patch.

## Conclusion

WHEREFORE, PREMISES CONSIDERED, Ed Oliver demands a jury trial and seeks an award of damages to be determined by the jury for all damages of whatever kind and type available under Mississippi law, fees (including attorney fees), and costs of whatever kind and type available under Mississippi law against defendants as a result of the defective Parietex™ Composite Ventral Patch described herein. Ed Oliver also requests such general and equitable relief as this Court sees fit.

Respectfully submitted,
Ed Oliver, Plaintiff

By: *Edward Sanders*
Edward Sanders, MBN 8880

Dated: 23 June 2022

**OF COUNSEL:**
Edward Sanders
Sanders Law
229 Katherine Drive
Flowood, MS  39232
T: 601-709-3542
ES@sanderslaw.us